RESSLER & RESSLER
Attorneys for Coreolis Holdings, Inc.
and Tradewinds Holdings, Inc.
Bruce J. Ressler (BR—6329)
Ellen R. Werther (EW—8545)
48 Wall Street
New York, NY 10005
(212) 695-6446



10 CIV 8175

RECEIVED
OCT 2 0 2010
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

COREOLIS HOLDINGS, INC. and TRADEWINDS
HOLDINGS, INC.,

                Plaintiffs,

    -against-

GEORGE SOROS and PURNENDU CHATTERJEE,

                Defendants.

----------------------------------------------------------------X

CASE NUMBER:

_____

COMPLAINT

JURY TRIAL DEMANDED

Plaintiffs, COREOLIS HOLDINGS, INC. and TRADEWINDS HOLDINGS, INC, by their attorneys, RESSLER & RESSLER, complaining of the defendants, allege upon information and belief, as follows:

## INTRODUCTION

1.    This is an action by Plaintiffs, as the holders of a judgment against C-S Aviation Services, Inc., to pierce the corporate veil of said shell corporation, and recover the judgment from its controlling principals, George Soros and Purnendu Chatterjee.

## PARTIES, JURISDICTION AND VENUE

2.    Plaintiff, Coreolis Holdings, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Los Angeles, California.

1

3.     Plaintiff, Tradewinds Holdings, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Los Angeles, California and is a wholly owned subsidiary of Coreolis. (Plaintiffs, Coreolis Holdings, Inc. and Tradewinds Holdings, Inc., are referred to collectively herein as "Coreolis").

4.     Defendant, George Soros ("Soros"), is a natural person and a resident and citizen of the State of New York.

5.     Defendant, Purnendu Chatterjee ("Chatterjee"), is a natural person and a resident and citizen of the State of New York.

6.     Plaintiffs invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. §1332, as there exists complete diversity between the plaintiffs and defendants, and the amount in controversy exceeds $75,000.

7.     Venue is properly laid in the Southern District of New York, as events giving rise to this action occurred in the State, City and County of New York, and the defendants reside and/or have their principal place of business in New York County.

<u>FACTS</u>

8.     In 1994, Soros and Chatterjee, long-time business partners, decided to enter the aviation financing business together. For this purpose, they put in place a complex, multi-tiered corporate structure designed to, *inter alia*, conceal Soros's participation in the business, and ensure that the aircraft management company which actually conducted the business and might therefore be sued in connection with its conduct of the business, owned no aircraft and was otherwise judgment proof. The entire business structure was designed as an elaborate shell game intended to defraud and perpetrate injustice.

9.     C-S Aviation Services, Inc. ("C-S Aviation") was incorporated in Delaware to serve as the aircraft management company pursuant to the fraudulent plan described above. Chatterjee has, at all pertinent times, been the sole shareholder of C-S Aviation. Soros, however, has at all times personally owned one half of C-S Aviation, notwithstanding the irregularity of Defendants' failure to record Soros' interest through ownership of stock. For several years, Chatterjee, personally and directly, and/or through his agents, controlled and dominated C-S Aviation. In 1998, however, Defendant Soros personally and directly, and/or through his agents, assumed domination and control of C-S Aviation. This state of affairs persists to the present day. Thus, Chatterjee and Soros are undoubtedly responsible for the misconduct of C-S Aviation which gave rise to the judgment against that corporation and in favor of Coreolis.

10.     Soros and Chatterjee organized their aviation business in the manner described above, and grossly undercapitalized C-S Aviation for the purpose of defrauding potential judgment creditors, such as Coreolis. In a further effort to defraud creditors, while simultaneously evading Federal Aviation Administration regulations designed to safeguard national security, Defendants vested bare-bones legal title to the aircraft, which they controlled through C-S Aviation, in Wells Fargo Bank Northwest NA (hereafter "Wells Fargo") as "owner-trustee." Notwithstanding the bare-bones legal title vested in Wells Fargo, Defendants retained beneficial ownership of the aircraft through a series of foreign corporations designed to avoid payment of taxes. All profits from rental of the aircraft were up-streamed to Defendants; Wells Fargo never held any monies with which to satisfy a judgment. In all litigation arising out of the C-S Aviation aircraft leasing business, Wells Fargo appeared as a "straw-man" party. If Defendants/C-S succeeded in the litigation, proceeds were paid to Defendants and not to Wells Fargo. If Defendants/C-S were unsuccessful in the litigation, Wells Fargo refused to pay the

resulting judgment, protesting that it had appeared in the litigation merely as "owner-trustee," and held no assets in trust from which to make payment. Thus, Wells Fargo's appearance in litigation was just one more aspect of the elaborate shell game Defendants designed to defraud creditors such as Coreolis.

11.     Defendants Soros and Chatterjee also operated C-S Aviation as their alter-ego, not only by grossly undercapitalizing the company, but also by entirely ignoring corporate formalities, disregarding formal management structure, keeping no minutes of Directors' meetings or other normal corporate records, operating the company through persons who were neither its officers nor its directors, freely co-mingling the funds of C-S Aviation with the funds of other companies or entities they controlled and with their own funds, up-streaming all income from C-S Aviation to themselves on an opportunistic basis, and ensuring that C-S Aviation always hovered on the verge of insolvency in order to defraud creditors and render C-S Aviation judgment proof. Defendants ignored and abused the corporate form with abandon. In short, "C-S Aviation Services, Inc." was a sham, designed and operated to perpetrate fraud.

12.     In early 2003, following a post 9/11 downturn in the aviation industry, Defendants decided to abandon C-S Aviation and allow creditors to obtain default judgments against that entity.  On July 15, 2003, Jet Star Enterprises, Ltd. obtained a judgment against C-S Aviation in the amount of $3,432,867 in Federal District Court for the Southern District of New York.  Ten days later, when said judgment became collectible under the Federal Rules of Civil Procedure, Defendants hastily stripped C-S Aviation of its officers, directors, employees, cash, chattel, business goodwill, business contracts and business functions.  A new corporation, utilizing the same employees to perform the same business functions, immediately commenced conducting business on Defendant Soros's premises after C-S Aviation was dismembered.

13.     Subsequently, a judgment creditor of C-S Aviation, Jet Star Enterprises, brought suit in the Southern District seeking to, *inter alia*, pierce the corporate veil of C-S Aviation to reach Defendants Soros and Chatterjee. The proceedings in said action, 05 CV 6585 (HB), are a matter of public record and shed light upon the manner in which Soros and Chatterjee abused the corporate form in their operation of C-S Aviation.

14.     In the wake of the foregoing events, Defendants Soros and Chatterjee did not even wind up the affairs of C-S Aviation in compliance with Delaware law, but instead simply stopped paying fees due to the State of Delaware. For a period of years, C-S Aviation existed in a void condition, violative of its own by-laws.

15.     In January of 2004, Coreolis, which was engaged in complex litigation involving certain aircraft originally leased to its wholly-owned subsidiary, Tradewinds Airlines, Inc. ("TradeWinds"), filed a Third Party Complaint against C-S Aviation in the Superior Court of Guilford County, North Carolina (the "North Carolina Court"). Coreolis and TradeWinds were co-third party plaintiffs on the Third Party Complaint filed against C-S Aviation. A copy of said complaint, with summons, was sent via certified mail to the offices of Defendant Soros, but was ignored. In due course, service of the Third Party Complaint upon C-S Aviation was perfected in compliance with North Carolina law. In August of 2004, Coreolis and TradeWinds moved the North Carolina Court to enter the default of Third Party defendant, C-S Aviation.

16.     Due to apparent clerical error, the North Carolina Court entered the default of C-S Aviation twice, once in 2004, and again in 2007 following settlement of the balance of the litigation. For a period of years, Defendants Soros and Chatterjee were aware of the default entered against C-S Aviation in the North Carolina litigation, but took no action.

17.    In early 2008, TradeWinds moved for entry of a default judgment against C-S, Aviation. On June 27, 2008, following submission of evidence and a hearing, the North Carolina Court entered judgment in favor of TradeWinds and against C-S Aviation. In early 2009, Coreolis similarly moved for entry of a default judgment against C-S Aviation.

18.    Immediately following entry of the TradeWinds default judgment, TradeWinds instituted a veil piercing action against Soros and Chatterjee in the Southern District of New York.  After the TradeWinds veil piercing action was filed, Soros and Chatterjee belatedly paid the fees due the State of Delaware in order to bring C-S Aviation back into good corporate standing so that it could move the North Carolina Court to vacate the default and default judgment. Coreolis is informed and believes that Soros and Chatterjee engaged in myriad improprieties in connection with reviving C-S Aviation. Coreolis is further informed and believes that Soros and Chatterjee's manner of operating C-S Aviation since they revived that corporation has constituted an on-going abuse of the corporate form; in particular, Soros and Chatterjee liberally fund the North Carolina litigation while leaving C-S Aviation a judgment-proof empty husk.

19.    The North Carolina Court ultimately denied C-S Aviation's motion for relief from default and granted its motion for relief from default judgment. The North Carolina Court directed that discovery on damages be conducted and a hearing be held, with the full participation of C-S Aviation, to determine the respective damages of Coreolis and TradeWinds. That Court then held a six day bench trial in May of 2010 at which the allegations of the Third Party Complaint against C-S Aviation were deemed admitted, and Coreolis and TradeWinds were required to prove their respective damages.

20.     On July 26, 2010, the North Carolina Court rendered a Final Judgment in favor of Coreolis against C-S Aviation. A true copy of the Final Judgment is annexed hereto as **Exhibit 1**. The value of the Final Judgment on the date it was rendered was $39,474,787, which sum includes trebling and interest per the North Carolina Court's order. At the North Carolina statutory interest rate of eight percent per annum, the value the Final Judgment increases at the rate of approximately $8,652.01 per day.

21.     On July 26, 2010, the North Carolina Court also rendered a separate Final Judgment in favor of TradeWinds against C-S Aviation, as set forth on **Exhibit 1**. Enforcement of the TradeWinds Final Judgment is the subject of the pending TradeWinds veil piercing action in this court. Coreolis is not a party to that action.

22.     Coreolis is unable to collect its Final Judgment from C-S Aviation because defendants have abused the corporate form and rendered C-S Aviation insolvent and judgment-proof in the manner previously set forth herein. Moreover, at no time since service of the complaint against C-S Aviation in the North Carolina litigation, would Coreolis have been able to collect from Wells Fargo any judgment rendered against C-S Aviation for its misconduct.

23.     Defendants' conduct has worked a great injustice and unfairness against Coreolis in that, *inter alia*, Defendants have created and operated C-S Aviation as their alter ego, abused the corporate form, disregarded C-S Aviation's formal management structure, failed to adequately capitalize C-S Aviation, commingled C-S Aviation's assets with the assets of other entities that Defendants owned and/or controlled, profited by up-streaming profits to themselves, and deliberately structured and operated C-S Aviation in a manner designed to  render it judgment proof, thus leaving Coreolis without compensation for the huge economic harm

inflicted by their creature, C-S Aviation, in violation of North Carolina law, as reflected in the unsatisfied North Carolina judgment.

### FIRST CAUSE OF ACTION—TO PIERCE CORPORATE VEIL

24.     Coreolis repeats and incorporates by reference the allegations of each of the foregoing paragraphs herein.

20.     Defendants Soros and Chatterjee have abused the corporate form by creating an elaborate shell game to profit themselves while defrauding creditors, creating C-S Aviation as a judgment-proof sham corporation in furtherance of said scheme, treating C-S Aviation as their alter ego, and actually defrauding the creditors of C-S Aviation, including Coreolis, through this conduct, as previously set forth herein.

21.     Said misconduct of Soros and Chatterjee has caused Coreolis economic injury in the amount of $39,474,787, plus applicable interest.

22.     This Court should accordingly issue a judgment piercing the corporate veil of C-S Aviation, and holding Soros and Chatterjee personally liable, jointly and severally, for the full amount of the North Carolina Final Judgment entered in favor of Coreolis, plus applicable interest.

WHEREFORE, COREOLIS PRAYS FOR JUDGMENT AS FOLLOWS:

1)     Declaring the corporate veil of C-S Aviation pierced, and Defendants Soros and Chatterjee jointly and severally liable for any sum owed by C-S Aviation to Coreolis;

2)     Entering judgment in favor of Coreolis and against Defendants Soros and Chatterjee, jointly and severally, in the full amount of the North Carolina Final Judgment entered in favor of Coreolis, together with all applicable interest on said judgment;

3)     Awarding Coreolis attorney's fees and costs if and as allowed by law;

4) Awarding such other and further relief as this Court may deem just and proper.

Coreolis hereby demands trial by jury.

Dated: October 28, 2010

RESSLER & RESSLER

By Bruce J. Ressler

Bruce J. Ressler (BR-6329)
Ellen R. Werther (EW-8545)

48 Wall Street
New York, NY 10005
(212) 695-6446
*Attorneys for Coreolis Holdings, Inc.*
*and Tradewinds Holdings, Inc.*

**Exhibit 1**

NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
03 CVS 12215

TRADEWINDS AIRLINES, INC.,
TRADEWINDS HOLDINGS, INC.,
and COREOLIS HOLDINGS, INC.,

Third-Party Plaintiffs,

v.

C-S AVIATION SERVICES,

Third-Party Defendant.

FINAL JUDGMENT

{1}    This matter came on for trial without a jury based upon the submissions of the parties. The Court, having reviewed the evidence and the arguments of counsel, has determined which parties are entitled to which damages on the default. The two applications for attorneys fees filed pursuant to section 75-16.1 of the North Carolina General Statutes are addressed in a separate order entered contemporaneously with this Final Judgment.

> *Tuggle, Duggins & Meschan, P.A. by J. Nathan Duggins, III for Third-Party Plaintiff TradeWinds Airlines, Inc.*
>
> *Smith Moore Leatherwood LLP by Larry B. Sitton and Lisa K. Shortt for Third-Party Plaintiffs TradeWinds Holdings, Inc. and Coreolis Holdings, Inc.*
>
> *Ellis & Winters LLP by Paul K. Sun, Jr. and Curtis J. Shipley for Third-Party Defendant.*

Tennille, Judge.

I.

PROCEDURAL BACKGROUND

{2}    In February 2004, Defendants and Third-Party Plaintiffs TradeWinds Airlines, Inc. ("TradeWinds"), TradeWinds Holdings, Inc. ("TradeWinds Holdings"), and Coreolis Holdings, Inc. ("Coreolis") (collectively, the "TradeWinds Group") filed

an Amended Third-Party Complaint against C-S Aviation Services ("C-S Aviation").[1] After C-S Aviation failed to file an answer or otherwise respond to the Amended Third-Party Complaint, the TradeWinds Group filed a motion for entry of default against C-S Aviation, which the Court granted on August 19, 2004.

{3}  TradeWinds filed a motion for default judgment against C-S Aviation on April 14, 2008.[2] C-S Aviation did not appear to challenge the motion for default judgment at the hearing on June 19, 2008. The Court entered a default judgment against C-S Aviation on June 27, 2008, in the amount of $54,867,872.49 in favor of TradeWinds.[3] This judgment was entered almost four years after the original entry of default.

{4}  On September 17, 2009, the Court entered an Order on various motions, including the motion of C-S Aviation to set aside the entry of default and default judgment entered in favor of TradeWinds. The Court, in its discretion, denied the motion with respect to the entry of default, but granted the motion with respect to the default judgment. The Court then allowed the parties 140 days to conduct fact discovery on damages.

{5}  In May 2010, a six-day hearing on damages was held at the North Carolina Business Court. The Court heard live testimony from Robbie Dexter, Jeffrey Conry, Richard Ressler, George McConnaughey, James Feltman, George Hawkins, Robert Agnew, and Stephen Kalos. C-S Aviation declined to put on live testimony from a corporate representative.

II.

AMENDED THIRD-PARTY COMPLAINT

{6}  According to the North Carolina Court of Appeals, "[u]pon entry of default, the defendant will have no further standing to defend on the merits or contest the

---

[1] The Amended Third-Party Complaint also brought claims against Third-Party Defendants P-G Newco LLC, S-C Newco LLC, Wells Fargo Bank Northwest, N.A., and Does 1–20.
[2] Coreolis and TradeWinds Holdings did not participate in TradeWinds's motion for default judgment.
[3] This $54,867,872.49 judgment represented a $16,326,528.94 damage award for C-S Aviation's breach, plus treble damages and prejudgment interest.

plaintiff's right to recover." *Luke v. Omega Consulting Group, LC,* 194 N.C. App. 745, 751, 670 S.E.3d 604, 609 (2009). Therefore, in effect, C-S Aviation is deemed to have admitted the allegations of the Amended Third-Party Complaint. *See United Leasing Corp. v. Guthrie,* 192 N.C. App. 623, 630, 666 S.E.2d 504, 509 (2008).

{7}    Before setting forth a determination on the amount of damages the parties are entitled to recover on the default, the Court would like to highlight the following allegations from the Amended Third-Party Complaint:

> ¶ 78:  In negotiating the Initial Lease and Restructured Leases, C-S Aviation, as agent for the third-party defendants, made numerous false statements to the TradeWinds Group.  Among other things, C-S Aviation represented that: (1) the engines installed on the airplanes had been recently overhauled so that they could be utilized for a minimum of 1700 cycles before it was necessary to overhaul the engines; and (2) the engines hade been maintained properly, with routine service and proper replacement of all parts.

> ¶ 79:  The TradeWinds Group reasonably relied on these representations when made.  Had the TradeWinds Group known that it was receiving engines that would fail to meet guaranteed performance objectives, it never would have entered into any of the leases at issue.  Moreover, had Coreolis known of the misrepresentations, it never would have purchased TradeWinds Holdings in December 2001.

> ¶ 80:  C-S Aviation knew that these representations were false when made.  In fact, C-S Aviation knowingly used inferior and substandard parts in its overhaul of the engines and C-S Aviation knew, as a result, that the engines could not possibly perform as promised.

> ¶ 38:  When the engines began to fail, TradeWinds commenced an investigation into the possible reasons for the failures.  During this investigation, TradeWinds discovered that C-S Aviation knew before the Aircraft were leased to TradeWinds that it was delivering inferior engines with the Aircraft.  In particular, TradeWinds learned, contrary to explicit representations, that C-S Aviation had failed to properly overhaul the engines.  Specifically, TradeWinds learned that C-S Aviation had used substandard and inferior parts during the purported overhaul, resulting in engines that would need significant maintenance well short of the 1700 cycles promised.

¶ 98: Among other things, C-S Aviation failed to pay interest on amounts deposited by TradeWinds for maintenance reserves, failed to release reserves to TradeWinds for eligible maintenance events, failed to provide engines that had been maintained to a level so that they would perform for 1700 cycles before requiring an overhaul, and failed to provide TradeWinds with lease rates in accordance with TradeWinds' "most favored nation" status.

¶ 102: C-S Aviation, as agent for and the third-party defendants, has engaged in unfair and/or deceptive acts and practices as defined by the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 et seq. Among other things C-S Aviation engaged in fraudulent inducement of the leases at issue.

III.

DAMAGES

A.

COREOLIS AND TRADEWINDS HOLDINGS

{8} Coreolis and TradeWinds Holdings's maximum investment in TradeWinds was $11,544,000.00. Coreolis and TradeWinds Holdings lost that amount as a result of the fraudulent inducement by C-S Aviation, as alleged in the Amended Third-Party Complaint. (*See* Am. Third-Party Compl. ¶¶ 77–83.) That investment represents the amount Coreolis and TradeWinds Holdings paid to settle the claims asserted against them and their wholly owned subsidiaries in the underlying Deutsche Bank litigation (i.e., their share of the lease payment differential that TradeWinds was required to pay under the Restated and Amended Lease Agreements in the settlement with Deutsche Bank as Trustee). That monetary investment is the amount of damages they are entitled to recover.

{9} North Carolina law mandates an automatic assessment of treble damages once a violation of the North Carolina Unfair and Deceptive Trade Practices Act is shown. *See* N.C. Gen. Stat. § 75.16 (2009); *see also Marshall v. Miller*, 302 N.C. 539, 547, 276 S.E.2d 397, 402 (1981) ("Absent statutory language making trebling discretionary with the trial judge, we must conclude that the Legislature intended trebling of any damages assessed to be automatic once a violation is shown."). As stated above in paragraph 6, the allegations against C-S Aviation for unfair and

deceptive practices are deemed admitted. Therefore, Coreolis and TradeWinds Holdings's damage amount of $11,544,000.00 is subject to trebling.

{10} Coreolis and TradeWinds Holdings have failed to prove that they suffered damages attributable to C-S Aviation as a result of the Settlement Agreement covering the lease dispute with Deutsche Bank aside from the sums contributed to satisfy the contractual obligations of TradeWinds in the amount specified above in paragraph 8. The decision of the owners of the stock in TradeWinds to settle on a particular business basis notwithstanding their knowledge of TradeWinds's cash needs and the obvious requirement of refinancing was a business judgment made by Coreolis and TradeWinds Holdings that is not attributable to C-S Aviation.

{11} The evidence with respect to the value of TradeWinds lost by Coreolis and TradeWinds Holdings was unpersuasive on a number of grounds. Coreolis and TradeWinds Holdings made their investment decisions subsequent to their initial investment with full knowledge of all the facts. Their owners and managers were smart, intelligent, sophisticated investors who were knowledgeable about the industry. They had the means to invest in TradeWinds at levels which would have eliminated its cash flow problems. After the settlement, they declined to invest further. That refusal, combined with the inability of TradeWinds to find financing or additional investors, is real-world, unhypothetical evidence of the lack of equity value in TradeWinds at that time.

B.

TRADEWINDS

{12} TradeWinds lost $16,111,403.00 as a result of the fraudulent inducement by C-S Aviation, as alleged in the Amended Third-Party Complaint. (*See* Am. Third-Party Compl. ¶¶ 77–83.) Those damages fall into the following categories:

| | |
|---|---|
| Repair Cost for Engines | $2,693,403.00 |
| Lease Payment Differential | $6,216,000.00 |
| Other Damages from Engine Failures | $7,202,000.00 |
| TOTAL: | $16,111,403.00 |

Because the allegations against C-S Aviation for unfair and deceptive acts and practices are deemed admitted, TradeWinds's damage amount of $16,111,403.00 also is subject to trebling. (*See supra* ¶ 9.)

{13} TradeWinds has failed to prove that its losses attributable to the lease of Canadian aircraft in connection with its ICC Agreement were proximately caused by any fraudulent conduct of C-S Aviation as alleged in the Amended Third-Party Complaint.

IV.

CONCLUSIONS OF LAW

{14} Therefore, based on the foregoing, it is hereby ORDERED, ADJUDGED AND DECREED:

1. Coreolis and TradeWinds Holdings have and recover Judgment against C-S Aviation in the amount of $11,544,000.00, subject to trebling, with interest accruing thereon as provided by law.

2. TradeWinds have and recover Judgment against C-S Aviation in the amount of $16,111,403.00, subject to trebling, with interest accruing thereon as provided by law.

SO ORDERED, this the 26th day of July, 2010.

/s/ Ben F. Tennille
The Honorable Ben F. Tennille
Chief Special Superior Court Judge
   for Complex Business Cases

RESSLER & RESSLER
*Attorneys for Coreolis Holdings, Inc.*
*and Tradewinds Holdings, Inc.*
Bruce J. Ressler (BR-6329)
Ellen R. Werther (EW-8545)
48 Wall Street
New York, NY 10005
(212) 695-6446


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

COREOLIS HOLDINGS INC. AND TRADEWINDS
HOLDINGS, INC.,

                     Plaintiffs,

     -against-


GEORGE SOROS and PURNENDU CHATTERJEE,

                   Defendants.

------------------------------------------------------X

**Case Number: _____**


## COMPLAINT & JURY DEMAND