```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
TRADEWINDS AIRLINES, INC.,          :
                                    :
                  Plaintiff,        :
                                    :
     -against-                      :
                                    :
GEORGE SOROS, et al.,               :
                                    :         08 Civ. 5901 (JFK)
                  Defendants.       :         10 Civ. 8175 (JFK)
------------------------------------X
COREOLIS HOLDINGS, INC., et al.,    :         MEMORANDUM OPINION
                                    :              AND ORDER
                  Plaintiffs,       :
                                    :
     -against-                      :
                                    :
GEORGE SOROS, et al.,               :
                                    :
                  Defendants.       :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 02/01/2011

**JOHN F. KEENAN, United States District Judge:**

In 2008, TradeWinds Airlines, Inc. ("TradeWinds") commenced the first of these consolidated actions to pierce the corporate veil of C-S Aviation Services, Inc. ("C-S Aviation") and enforce against George Soros ("Soros") and Purnedu Chatterjee ("Chatterjee") (collectively, "Defendants") a default judgment entered by the Superior Court of the State of North Carolina for Guillford County on June 27, 2008. In February 2009, due to ongoing litigation before the North Carolina Superior Court contesting the validity of the default judgment ("the North Carolina Action"), this Court stayed TradeWinds' action "pending the North Carolina court's decision on the motion to vacate the

-1-

default judgment." <u>TradeWinds Airlines, Inc. v. Soros</u>, No. 08 Civ. 5901, 2009 WL 435298, *4 (S.D.N.Y. Feb. 23, 2009). Subsequently, the North Carolina Superior Court vacated the 2008 Judgment, but maintained the entry of default and held a hearing on damages. On July 26, 2010, the North Carolina Superior Court entered judgment in favor of TradeWinds in the amount of $16,111,403. Coreolis Holdings, Inc. ("Coreolis") and TradeWinds Holdings, Inc. ("Holdings") (collectively with TradeWinds, "Plaintiffs") commenced the second of these veil-piercing actions, bringing claims similar to those in the TradeWinds action against Defendants on October 28, 2010.

Before the Court is Defendants' motion to continue the stay imposed in February 2009 until the completion of post-trial litigation and appeal in North Carolina state court. On November 16, 2010, the parties to the second action stipulated that the Court's ruling on Defendant's motion to continue the stay would "apply equally to proceedings" in the second action. At a conference held on January 14, 2011, while this motion was <u>sub judice</u>, the Court consolidated these two actions with the consent of counsel for all parties to both actions. For the reasons set forth below, Defendants' motion to continue the stay is granted in part and denied in part.

**I.   Background**

Unless otherwise noted, the facts below are taken from the motion papers and supporting affidavits, and do not constitute findings of fact.

**A.   North Carolina Superior Court Litigation**

On February 4, 2004, TradeWinds and its parent companies, Coreolis and Holdings, filed a third-party complaint against C-S Aviation, C-S Aviation's principals, and Wells Fargo Bank Northwest, NA.  The third-party complaint alleged that C-S Aviation and its principals fraudulently induced TradeWinds to lease seven cargo aircraft and engaged in other illegal conduct. C-S Aviation failed to defend the action despite being served with process, and the North Carolina Superior Court entered the default of C-S Aviation with respect to the third-party complaint.  The claims against C-S Aviation's principals were settled in April 2005.  On June 27, 2008, the North Carolina Superior Court entered judgment against C-S Airlines ("the 2008 Judgment").

On August 25, 2008, C-S Aviation revived its Delaware certificate of incorporation, which had been void for nonpayment of fees since March 2005.  On August 27, 2008, after the commencement of the instant action, C-S Aviation moved in the North Carolina Superior Court to set aside the entry of default and vacate the 2008 Judgment.  C-S Aviation asserted that the

2008 Judgment should be vacated because the third-party complaint filed by TradeWinds in 2004 did not state a claim for which relief could be granted.  The North Carolina Superior Court vacated the 2008 Judgment but did not vacate the entry of default, and conducted a hearing on damages before entering a judgment ("the 2010 Judgment") in favor of TradeWinds on July 26, 2010, "in the amount of $16,111,403, subject to trebling, with interest thereon as provided by law." (August 23, 2010 Declaration of Raymond Fitzgerald, Ex. 5 ¶ 14.2.)

Subsequently, C-S Aviation filed a motion to vacate or amend the 2010 Judgment.  As of this date, the North Carolina Superior Court has not decided the C-S Aviation's post-trial motion.

**B.   The Instant Actions**

TradeWinds instituted its veil-piercing action in this Court on June 30, 2008, three days after the entry of the 2008 Judgment by the North Carolina Superior Court, and five days after filing for bankruptcy in the Southern District of Florida. On October 3, 2008, TradeWinds filed an amended complaint alleging that Soros and Chatterjee operated C-S Aviation as their alter ego by ignoring corporate formalities, siphoning corporate funds, and stripping the company of its assets. (Amended Complaint ¶¶ 10-11.)  Such abuse of the corporate form

is alleged to have rendered the company unable to satisfy the 2008 Judgment. (Id. ¶¶ 17-18.)

Defendants then moved to dismiss or stay the TradeWinds action pending resolution of the motions to vacate the 2008 Judgment in North Carolina Superior Court.  In an order issued on February 23, 2009, the Court granted the motion in part, stayed the action pending entry of a final judgment by the North Carolina Superior Court, and reserved judgment on the motion to dismiss. TradeWinds Airlines, 2009 WL 435298, at *4.  After the North Carolina Superior Court vacated the 2008 Judgment and ordered a hearing on damages, this Court continued the stay until "a final determination on damages in the North Carolina action." TradeWinds Airlines, Inc. v. Soros, No. 08 Civ. 5901 (S.D.N.Y. Oct. 19, 2009).  When the North Carolina Superior Court entered the 2010 Judgment, the Defendants filed the instant motion to continue the stay pending resolution of the post-trial motions and any appeal in North Carolina state court.

On November 7, 2008, TradeWinds' parent companies Holdings and Coreolis filed a motion to intervene in the TradeWinds action in this Court.  This motion to intervene was withdrawn on February 12, 2009, after the U.S. Bankruptcy Court for the Southern District of Florida entered an order pursuant to 11 U.S.C. § 362(a)(1) barring Coreolis and Holdings from prosecuting claims related to the 2008 Judgment, which the

-5-

Florida Bankruptcy Court held "may prove to be one of the most valuable assets of the TradeWinds bankruptcy estate." In re TradeWinds Airlines, Inc., No. 08-20394, slip op. at 8 (Bankr. S.D. Fla. Feb. 10, 2009).  However, the Florida Bankruptcy Court lifted the stay on June 3, 2009, after Coreolis and Holdings obtained the consent from TradeWinds' Bankruptcy Trustee to move forward with their action. In re TradeWinds Airlines, Inc., No. 08-20394, slip op. at 2 (Bankr. S.D. Fla. June 3, 2009).  On October 28, 2010, Coreolis and Holdings commenced the second of these veil-piercing actions, stating claims similar to those brought by TradeWinds.  At a conference held on January 14, 2011, the TradeWinds action and the action filed by Coreolis and Holdings were consolidated on the consent of all parties to both actions.

    Plaintiffs have identified several potential witnesses who have not been deposed in these veil-piercing actions due to the issuance of the stay in February 2009.  Specifically, Bharat Bhise, former Chief Executive Officer of C-S Aviation, James Walsh, Bhise's successor as CEO, Thomas Seery, Senior Vice-President of C-S Aviation, and Gary Kincaid, a former C-S Aviation employee, as well as defendant Soros, are named as potential witnesses by the Plaintiff. (See Declaration of Violet Elizabeth Grayson ¶¶ 5-7.)

## II.  Discussion

**A.  Legal Standard**

A district court has the inherent power "to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936).  Incidental to this power is the power to stay an action. Id.; see also WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997) (discussing "parallel-proceeding abstention" as a basis for issuing a stay).  In deciding a motion to stay, the court looks to various factors, including:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting Volmar Distribs. v. N.Y. Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).  In balancing these factors, "the basic goal is to avoid prejudice." Kappel, 914 F. Supp. at 1058.  "[I]f there is even a fair possibility that the stay for which [the movant] prays will work damage to someone else," the movant "must make out a clear case of hardship or inequity in being required to go forward." Landis, 299 U.S. at 255.

**B.      Balancing Competing Interests in this Case**

The first factor in determining whether to issue (or continue) a stay is the balance of "private interests of the plaintiffs in proceeding expeditiously with the civil litigation" against "the prejudice to the plaintiffs if delayed." Kappel, 914 F. Supp. at 1058.  Defendants move to stay the instant action "until the pending post-trial motion, and any subsequent appeal, is decided in the North Carolina Action." (Df.'s Memo. in Support, at 7 (emphasis added).)  In weighing the Kappel elements, the Court notes that the length of Defendants' proposed stay for post-trial motions and appeals could be longer than the previously imposed stay, and that Plaintiffs raise concerns about the continued availability of evidence.

In its February 23, 2009, Memorandum Opinion and Order, the Court held that the "concern for a plaintiff's right to proceed with its case" is minimal because TradeWinds' right to proceed with its case depends on the outcome of the motion to vacate." TradeWinds Airlines, 2009 WL 435298, at *7-8 (quoting Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc., No. 05 Civ. 5155, 2007 WL 674691, at *5 (E.D.N.Y. Feb. 28, 2007)).  In the time since the Court issued the stay of the TradeWinds action, the North Carolina Superior Court decided the motion to vacate, conducted a trial on damages, and entered the 2010 Judgment.

Despite the progress of nearly two years of litigation, the ability of Plaintiffs to proceed with the instant action still depends on the outcome of post-trial motions and appeals in North Carolina state court; it is undisputed that Plaintiff's claim to pierce the corporate veil and enforce the default judgment against the Defendants must be dismissed if the default judgment is vacated.

The Court recognizes that the ability of Plaintiff to proceed in this action is ultimately contingent on the result of state-court litigation.  However, this fact alone is not determinative of whether the Court should exercise its discretion to continue the stay.  In previously deciding to stay this action, the Court relied in part on the failure of TradeWinds to assert "that it or anyone else would suffer prejudice if forced to wait until the North Carolina court decides the motion." TradeWinds, 2009 WL 435298, at *8.  Now Plaintiffs have identified specific witnesses whose deposition testimony could become unavailable during the pendency of a stay due to illness, old age, or lapse of memory.  Though Plaintiffs' ability to proceed with these actions will be determined in part by the result of post-trial litigation and appeal in North Carolina state court, the deterioration of evidence could prejudice the ability of Plaintiffs to proceed with these action if the 2010 Judgment is upheld only after key witnesses have

become unavailable to testify. Although the Kappel factors listed above generally weigh in favor of continuing the stay, the risks posed by an extended stay of these actions can be mitigated by permitting Plaintiffs to conduct a limited number of depositions. Depositions of Bharat Bhise, James Walsh, Thomas Seery, Gary Kincaid, and George Soros will preserve evidence without serious detriment to Defendants, the courts, or the public.

### III. Conclusion

For the foregoing reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART. In the interests of justice, the stay of this action is lifted in part, and the parties may proceed with:

(1) amendment of the pleadings necessary to reflect the entry of a judgment by the North Carolina Superior Court in July 2010; and
(2) depositions of Bharat Bhise, James Walsh, Thomas Seery, Gary Kincaid, and George Soros.

All other matters in this action are stayed pending resolution of the North Carolina state court appeal.

SO ORDERED.

Dated:   New York, New York
         February 1, 2011

*/s/ John F. Keenan*
JOHN F. KEENAN
United States District Judge